CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 17 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CLAUDE EDWARD BILLER, JR., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:10-cv-103 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | By: Hon. Glen E. Conrad |
| Social Security, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Claude Edward Biller, Jr., was born on August 24, 1963 and attended education through the eighth grade. Biller has previously worked as a carpenter. The Administrative Law Judge found that plaintiff last worked on a gainful basis prior to January 1, 2007. On May 13, 2008, plaintiff filed applications for disability insurance benefits and for supplemental security income benefits. In filing his claims, plaintiff alleged that he became

disabled for all forms of substantial gainful employment on October 15, 2004—an onset date that was later revised to January 1, 2007. He now maintains that he has remained disabled to the present time. As to his application for disability insurance benefits, the record reveals that Biller met the insured status requirements of the Act through the first quarter of 2007, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before March 31, 2007. See gen., 42 U.S.C. § 423(a).

Biller's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated May 26, 2010, the Law Judge also determined that plaintiff is not entitled to disability insurance benefits or supplemental security income benefits. The Law Judge found that Biller possessed the following severe impairments: rheumatoid arthritis, mild degenerative joint disease of the shoulders, mild degenerative disc disease of the cervical spine, and obstructive sleep apnea. On the other hand, the Law Judge determined that Biller's hearing limitations, depression, alcohol dependence, and borderline personality disorder were not "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(a) and 416.920(a). Finding that Biller possessed a residual functional capacity ("RFC") to perform sedentary work involving frequent, but less than repetitive, use of the hands in environments without unprotected heights or moving machinery, the Law Judge relied on the consultative opinion offered by Dr. Newell as well as the treatment notes of Drs. Martin and Lee. However, the Law Judge explicitly gave "very little weight" to the RFC assessments tendered by the latter two doctors, given his conclusion that they were inconsistent with the longitudinal record, including the doctors' own treatment notes. (TR

16.) The Law Judge further found that Biller is unable to perform any past relevant work, given that carpentry requires medium exertion. Nevertheless, the Law Judge found that, considering Biller's age, education, work experience, and RFC, he could still perform several jobs, such as addresser/stuffer or credit authorizer. Accordingly, the Law Judge concluded that Biller was not disabled for all forms of substantial gainful employment at any time during the period in which he still enjoyed insured status. See 20 C.F.R. § 404.1520(c).

Biller appealed the denial of his claims for disability insurance benefits and supplemental security income benefits to the Social Security Administration's Appeals Council. However, the Appeals Council eventually adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Biller has now appealed the denial of his claims to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's denial of plaintiff's applications for disability insurance benefits and supplemental security income is supported by substantial evidence. See 42 U.S.C. § 405(g).

3

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Laws, 368 F.2d at 642). In reviewing whether substantial evidence supports the findings of the Commissioner, the court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of [the Commissioner]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotation marks omitted). Thus, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant . . . is disabled, the responsibility for that decision falls on [the Commissioner]." Craig, 76 F.3d at 589.

The parties agree that Biller's "biggest problem" is his rheumatoid arthritis, with which he was diagnosed in approximately 2001. (TR 28.) By 2003, however, his treating physician, Dr. Jarjour, believed he did not have rheumatoid arthritis, given the lack of clinical stigmata to support such a diagnosis. (TR 369, 451.) Biller was not treated for rheumatoid arthritis for a period of several years other than receiving nonsteroidals and an occasional prednisone taper.

Between 2007 and 2010, Biller presented to several physicians, complaining of ongoing joint pain, sleep disorders, and depression. Dr. Lee diagnosed Biller with rheumatoid arthritis in August 2007, but noted that Biller reported his subjective pain as waxing and waning from day to day. (TR 459.) At his September follow-up appointment, Biller again told Dr. Lee that he was "having a pretty good day" as far as his rheumatoid arthritis went. (TR. 457.) In May 2008, Dr. Lee noted that Biller had possessed a positive rheumatoid factor in the past, but confirmatory tests had been negative for rheumatoid arthritis. Dr. Lee also noted that Biller was not suffering

4

an exacerbation of his rheumatoid arthritis at the time of his visit, although Biller told Dr. Lee that he suffered an exacerbation "every several months" that would render him wheelchair bound for approximately a week. (TR 454.) In June 2008, Dr. Lee noted that Biller had applied for disability "at my strong recommendation" but had been denied. Dr. Lee also noted that Biller appeared to be unable to walk without his wife's assistance and reported suicidal thoughts. (TR 451.) Lab work performed at this time showed that Biller had a negative rheumatoid factor, leading Dr. Lee to suspect that Biller suffered from seronegative rheumatoid arthritis. (TR 449.) By April 2010, Dr. Lee reported that Biller had severe rheumatoid arthritis, could not walk without assistance, needed to change his position at least every twenty minutes, and could not stand for more than five minutes. (TR 618.)

In the meantime, Biller had also been seen by Dr. Jarjour in December 2007. Radiographs and other lab work revealed no abnormalities involving Biller's hands except for a small deformity consistent with an old injury. Biller's mid and lower cervical spine showed changes of degenerative disk disease. Finally, while Dr. Jarjour found "significant" elevated rheumatoid factor titer, Biller did not have an active inflammatory process at the time of the examination, leaving Dr. Jarjour to conclude that the etiology of his joint symptoms was "unclear but . . . probably multi-factorial." (TR 370.) Dr. Jarjour also noted that Biller possessed "severe calluses" over his hands at the time of his examination. (TR 370.) Contemporaneous MRIs of Biller's hands and spine showed no significant abnormalities or deterioration. (TR 372-5.) A March 2008 diagnostic sleep study showed that Biller suffered from moderate sleep apnea. (TR 382.)

In October 2008, Biller was referred to Dr. Martin, who diagnosed him with seropositive rheumatoid arthritis and, in December 2008, prescribed treatment. (TR 553.) By January 8, 2009,

Dr. Martin reported that Biller's depression had improved to the point where he had stopped taking his medication and that Biller reported "significant improvement with no morning stiffness, significantly reduced articular swelling, and no visible articular erythema or palpable heat." (TR 547.) This positive assessment of Biller's response to treatment largely continued in the following months, although Dr. Martin noted in May 2009 that Biller suffered from "more mechanical symptoms than might otherwise be expected." (TR 599.) In September 2009, however, Dr. Martin noted that it appeared that Biller had failed to respond to his current disease-modifying, anti-rheumatic drug ("DMARD") regimen. (TR 594.)

Both Dr. Lee and Dr. Martin eventually rendered opinions regarding Biller's RFC. Dr. Martin's RFC opinion is dated March 29, 2009, at which time Biller's symptoms appeared to be responding to treatment. (TR 547, 607.) See also TR 586 (noting that Biller's disease should be controlled with medication). Nevertheless, Dr. Martin opined that Biller's impairments would "frequently" interfere with his attention and concentration, that he would be absent from work more than three times a month, that he would require more than ten rest periods of more than ten minutes each during an 8-hour work shift, that he could continuously sit or stand for only five minutes at a time, and that he could use his hands for simple grasping but not fine manipulation or pushing controls. (TR 588.) Dr. Lee submitted an RFC opinion dated March 18, 2010 with similar findings, except that he described Biller as "constantly" experiencing severe pain, ruled all hand-usage off limits for Biller, and simply stated that Biller is "unable to work" rather than specifying the number and duration of rest periods he would require in a typical work day. (TR 615.)

Unlike Drs. Lee and Martin, the consultative physician in this case, Dr. Newell, did not

6

believe that Biller was as limited as he claimed to be. Noting that Biller is independent in dressing and bathing, Dr. Newell also observed that, "[w]hen [Biller] entered the room, he ambulated very slowly, having his girlfriend or wife hold onto him, but surprisingly, during the physical exam with distraction, he complained of very little joint pain and had essentially close to normal range of motion of all of his joints." (TR 534.) Dr. Newell performed a negative straight leg raise test, identified no tenderness or swelling of any joints, noted normal range of motion in the hands, and observed that Biller had normal grip strength, could unscrew a bottle cap of water, and could pick a paper clip off the table with both hands. (TR 535.) Dr. Newell also found that Biller had normal muscle strength in his upper and lower extremities. (TR 530.) Overall, Dr. Newell was unsure that Biller truly had an inflammatory arthritis, believing instead that Biller possessed tenderness and decreased range of motion only in the cervical and lumbar spine. (TR 535.) As a result, Dr. Newell opined that Biller could stand and walk at least four hours in a typical work day, could sit from six to eight hours at a time, and did not need an assistive device to ambulate. (TR 536.)

Given the conflicting medical opinions in this case as to the severity of Biller's asserted impairments, plaintiff primarily argues that the Law Judge improperly discounted the RFC opinions rendered by plaintiff's treating physicians "in favor of his own notions" regarding the severity of plaintiff's ailments. (Pl. Br. at 23.) Plaintiff is correct that the so-called "treating physician rule" generally requires a court to accord greater weight to the testimony of a treating physician. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Nevertheless, a Law Judge holds the discretion to give less weight to the testimony of a treating physician if there is persuasive contrary evidence. Id. In other words, "if a physician's opinion is not supported by clinical

7

evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590). As the Fourth Circuit has expressly held, a Law Judge may give little weight to a treating physician's conclusory opinion based upon a patient's subjective reports of pain where the physician's own medical notes do not support his medical opinion. Craig, 76 F.3d at 590. See also 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

In this case, the Law Judge expressly noted that he accorded little weight to the opinions of Dr. Martin and Dr. Lee because they were inconsistent with the objective radiographic evidence, their own treatment notes, and the claimant's activities of daily living. (TR 14, 16.) The court has carefully reviewed the record and cannot conclude that the Law Judge's skepticism of Dr. Martin's and Dr. Lee's RFC opinions is unsupported by the record. It appears, for example, that Dr. Lee's diagnoses relied almost solely on Biller's subjective descriptions of pain and exacerbated episodes, even though Biller tested negative for rheumatoid factor and did not demonstrate inflammation or significant joint pain at the time of his presentations to Dr. Lee. The objective medical tests performed by Dr. Lee were inconclusive, at best, and unsupportive of his RFC determination, at worst. For instance, on August 24, 2007, Dr. Lee recorded that Biller had good range of motion with minimal ulnar deviation of his digits. (TR 459.) In June 2008, Dr. Lee also noted that Biller had suffered from his symptoms for the past eight years (TR 452); yet, in his RFC opinion, Dr. Lee made no explanation for Biller's ability to work as a carpenter until 2004, despite these symptoms. (TR 33.) On June 12, 2009, Dr. Lee again found after a physical examination that Biller had full range of motion. (TR 631.) Nevertheless, his RFC assessment concluded that Biller could not use his hands for any type of simple grasping, pushing or pulling of controls, or fine manipulation. (TR 616.)

Likewise, Dr. Martin opined that Biller's rheumatoid arthritis severely limited his functional capacity despite the fact that his contemporaneous treatment notes indicate that Biller was responding fairly positively to treatment at the time that Dr. Martin completed his RFC opinion. (TR 547.) Cf. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("Of course, a remediable impairment is not disabling."). Dr. Martin's physical examinations also largely found that Biller's neck was supple and that he had little active synovitis affecting his joints. (TR 548, 560.) Moreover, the RFC findings of both Dr. Lee and Dr. Martin with respect to Biller's ambulation and ability to use his hands appear to be unsupported by the radiographic records that they had at their disposal when conducting the RFC analysis. Biller's testimony of his own activities, which included a weekly 60- to 90-minute shopping excursion, also belie the RFC conclusions offered by his treating physicians. (TR 251.) Accordingly, the Law Judge did not err in significantly discounting the RFC opinions tendered by Drs. Lee and Martin. Mastro, 270 F.3d at 178. See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("[I]t is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence, and . . . it is the claimant who bears the risk of nonpersuasion.").

Nor did the Law Judge otherwise lack substantial evidence for his credibility and RFC determinations. See 20 C.F.R. §§ 404.1527(f) and 416.927(f). The radiographic records support the Law Judge's finding of limited impairment to the hands and joints, especially given Dr. Newell's consultative analysis. Although Dr. Newell did not have access to all of the available treatment notes, he did review several of Dr. Lee's notes before rendering his opinion. Given that the treatment notes that he did not possess—those of Dr. Martin and Dr. Jarjour—contain little or no objective medical findings that contradict Dr. Newell's ultimate opinion, and given that Dr.

Newell reviewed the relevant radiographic records, the court cannot conclude that Dr. Newell's inability to review every pertinent treatment note renders his report an insufficient basis for the Law Judge's credibility and RFC determinations. Craig, 76 F.3d at 589.

Nor are Dr. Newell's findings uncorroborated by the longitudinal record. As previously stated, Dr. Jarjour's notes and the radiographic records align with Dr. Newell's conclusions. In addition, Nurse Practitioner Borish performed a physical examination in March 2008 that revealed that plaintiff's gait and station were normal. (TR 392.) That same month, Dr. Chirichetti examined Biller and determined that he had 5/5 muscle strength in both lower and upper extremities, that a Spurling's test was negative for radicular pain bilaterally, and that a distracted straight leg raise was negative bilaterally. (TR 379.) Two state agency physicians also found that Biller could perform a limited range of light work. (TR 68, 86, 108.)

Moreover, given that reasonable minds could differ with respect to the import of Biller's reported daily activities, his callused hands, and his prior history of returning to substantial gainful employment after unsuccessful social security claims (TR 17, 221), the court cannot second-guess the Law Judge's reliance on them as evidence of Biller's disingenuousness. Craig, 76 F.3d at 589. Finally, given that no treating source found otherwise, the record amply supports the Law Judge's conclusion that Biller's asserted psychological impairments had minimal, if any, effect on his ability to work. (TR 43, 590.)

It follows that substantial evidence supports the Law Judge's determination at the fifth step of the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920 that plaintiff remains capable of performing several, specific jobs that exist in substantial number in the national economy. Indeed, the primary hypothetical given to the

Vocational Expert ("VE") gave the plaintiff the benefit of the doubt inasmuch as it described an unskilled individual with a sedentary RFC, included a fifteen-minute sit/stand limitation, required a low-noise requirement to compensate for plaintiff's hearing impairment, and credited Biller's allegations that he couldn't bend or ambulate without a walker and could use his hands only for frequent but not repetitive gripping and grasping. (TR 46-47.) Faced with these limitations, the VE testified that plaintiff could perform jobs such as credit authorizer and addresser/stuffer, specifically accounting for the sit/stand requirement noted by the Law Judge. Although the VE testified that no jobs would be available to the plaintiff if his testimony regarding his joint pain with medication, depression, and weight limitations were credited, the Law Judge's decision to discredit certain elements of Biller's testimony is supported by substantial evidence, as explained above.[1] Johnson, 434 F.3d at 653.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson, 402 U.S. at 400; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws, 368 F.2d at 642. An appropriate judgment and order will be entered this day.

---

[1] Even if, as the plaintiff argues, his hearing impairment constitutes a "severe" impairment for purposes of 20 C.F.R. § 404.1520(c), the Law Judge's determination at the fifth step of analysis would remain supported by substantial evidence, particularly given the allowance made for his hearing loss in the Law Judge's primary hypothetical. See Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (a Law Judge's error is harmless where it does not affect the ultimate disability conclusion).

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 17th day of May, 2011.

/s/ Glen Conrad
CHIEF UNITED STATES DISTRICT JUDGE